```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
```

**ANDRES SANTIAGO,**               )
                                   )
    Plaintiff,             )
                                   )
 v.                               )
                                   )  No. 09 C 4379
**CHICAGO BOARD OF EDUCATION,**    )
                                   )
    Defendant.             )
                                   )
                                   )

## MEMORANDUM OPINION AND ORDER

Plaintiff has brought this suit pro se against the Chicago Board of Education ("CBE"), alleging claims for sex discrimination, hostile work environment, and retaliation. Plaintiff additionally asserts a claim alleging breach of contract and violation of his right to due process. Defendant has moved for summary judgment. For the reasons explained below, the motion is granted.

I.

During the 2007-2008 academic year, plaintiff was enrolled in a master's degree program offered by the American College of Education ("ACE") and worked as a probationary teacher in a public elementary school. Under the ACE program, probationary teachers are assigned to schools for a one-year period, giving the parties an opportunity to determine the appropriateness of the teacher's continued placement at the school. Plaintiff's job responsibilities were equally divided between reading and language

arts instruction, on the one hand, and serving as a school "disciplinarian" on the other. (The parties do not describe precisely what the job of "disciplinarian" involves).

Plaintiff claims that he was treated unfairly and humiliated throughout the school year by the school's principal, Miryam Assaf Keller ("Keller"), and by several of the teachers and other school employees with whom he worked. He further alleges that the treatment became a form of retaliation after he lodged discrimination charges with the Equal Employment Opportunity Commission ("EEOC").[1] In his response brief, plaintiff describes various forms of what he regards as harassment and humiliation. He claims that Principal Keller unfairly reprimanded him for having written a letter to Karen Galva, a female teacher, stating that he "wanted to share many things with her," that he "wanted to know her," and that he was excited about "potentially starting a very special friendship" with her. 56.1 Stmt. ¶ 14. Another teacher, Elisa Nieves, reported to Keller that plaintiff made her feel uncomfortable "by looking at her constantly and finding reasons to be near her," 56.1 Stmt. ¶ 17. Plaintiff complains that he was humiliated by having to attend a conference with Keller and Nieves to discuss the matter. He claims that he was subjected to further

---

[1] The charge was cross-filed with the Illinois Department of Human Rights ("IDHR") and the EEOC. For simplicity, I refer to the "EEOC charge" or more generically to "the charge"; however, these references are equally applicable to the IDHR charge.

abuse on another occasion, when Nieves received flowers from a "secret admirer." According to plaintiff, Keller "made it seem" as though he had sent the flowers, even though she knew that he had not.

Along with this, plaintiff claims that he was forced to remove his belongings from his office for several days; that he was instructed to perform various tasks by Keller's husband, who apparently worked as a volunteer at the school; *see* Reply Br. at 5; that he was required to submit lesson plans while other teachers were not; that Keller edited a letter he wrote to complain about a conflict with another teacher; that he was called over the school's intercom to report to the office in a condescending and rude manner; and that on report card day, he was assigned to perform other work and, unlike female teachers, was not allowed to meet with students' parents. According to plaintiff, the discriminatory and retaliatory treatment culminated with Principal Keller's decision not to renew his employment for the 2008-2009 school year.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To establish a claim of sex discrimination, or disparate treatment, a plaintiff can proceed either directly, by presenting direct and/or circumstantial

evidence of the employer's discriminatory intent, or indirectly, through the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 646 (7th Cir. 2005) (citations omitted). Plaintiff here does not specify the method under which he wishes to proceed. This matters little, however, because defendant is entitled to summary judgment under either method.

"A plaintiff can prevail under the direct method by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008) (quotation marks omitted). The Seventh Circuit has emphasized, however, that "the circumstantial evidence must point directly to a discriminatory reason for the employer's action." *Id.* (quotation marks omitted). Here, plaintiff has failed to adduce evidence indicating that he suffered discrimination on the basis of his sex. Most of the allegations recounted above are offered without any citation to the record. Indeed, plaintiff has almost entirely ignored the requirements of Local Rule 56.1, which, even as a pro se plaintiff, he is required to observe. *See, e.g.*, *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). But even if plaintiff's allegations were supported by evidence, they provide precious little evidence that the ill treatment of which he complains had anything specifically

to do with his sex.

Plaintiff is also unable to survive summary judgment under the indirect method. "To establish a sex discrimination claim under the indirect method, the *McDonnell Douglas* burden-shifting approach provides as follows: (1) the plaintiff must establish a prima facie case of discrimination based on her membership in a protected class; (2) once a prima facie case is made, a presumption of discrimination is established and the burden shifts to the defendant to provide a legitimate, non discriminatory reason for the challenged action; and (3) once the defendant meets that burden, the plaintiff must establish that those proffered reasons were mere pretext." *Id.* at 647.

Plaintiff is unable to establish a prima facie case of sex discrimination. To make out a prima facie case, a plaintiff must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated female employees. *Id.* Plaintiff's claim founders on the last of these requirements: he fails to identify any similarly situated female employees -- let alone similarly situated female employees who were treated better than he was. Plaintiff singles out three teachers as putative comparators: Jewell Hodges, Persida Rivera, and Clarissa Dominici. But unlike plaintiff, Dominici was not a probationary teacher; and

more importantly, none of the three had performance problems or a disciplinary history comparable to plaintiff's. *See, e.g., Amrhein v. Health Care Service Corp.*, 546 F.3d 854, 860 (7th Cir. 2008) (without a similar disciplinary history, co-worker could not be considered "similarly situated").

Even if plaintiff were able to make out a prima facie case, his claim still would fail because defendant has come forward with a legitimate, non-discriminatory reason for not renewing his employment: his unusual behavior. As noted above, at least two teachers -- Galva and Nieves -- complained that plaintiff's conduct made them feel uncomfortable. Other examples of odd behavior include plaintiff's penchant for performing acrobatic flips in the school; his attempts to play a "multiplication game" with another teacher's students during their lunch period, even after both the teacher and Keller asked him not to do so because it left the children with too little time to eat, and because his job was to teach reading and language skills, not mathematics. *See* Def.'s Ex. 3, Keller Aff. ¶ 14. Keller also avers that plaintiff "failed to adhere to tutoring requirements, required a great deal of time and attention, confronted management decisions in a way that was insubordinate, initiated inappropriate or confrontational interactions with other staff, was unsupportive and uncooperative in front of other teaching staff, and was disruptive to the educational process." Def.'s 56.1 Stmt. ¶ 23.

Plaintiff has not come forward with any evidence suggesting that the reasons for his non-renewal were pretextual. On this point, it is worth noting that from the year 2005 (the year after the probationary teaching program was begun) to June 2008 (when Keller retired), Keller non-renewed a total of ten female teachers and five males. Def.'s 56.1 Stmt. ¶ 12. Prior to her retirement in 2008, Keller non-renewed four probationary teachers in addition to plaintiff for the upcoming 2008-2009 school year; of these additional non-renewals, two were female and two were male.

For largely the same reasons, plaintiff's retaliation claim does not survive summary judgment. "To establish a claim of retaliation under the indirect method of *McDonnell Douglas*, a plaintiff must establish that (1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner." *Whittaker*, 424 F.3d at 647 (quotation marks omitted). "Thereafter, the familiar burden-shifting approach again takes hold, requiring the defendant to come up with a noninvidious reason for the adverse action." *Id.* (quotation marks omitted).

As explained above, plaintiff has adduced no evidence of comparators who were treated more favorably than he was, nor any evidence that his non-renewal was pretextual. This alone is enough

to defeat plaintiff's retaliation claim.  In addition, there is no evidence that Keller was aware that plaintiff had filed a charge with the EEOC prior to her decision not to renew his employment. Plaintiff was informed of the non-renewal in writing on March 5, 2008.  However, his EEOC charge was not filed until March 12, 2008.

Plaintiff claims that although his complaint was not "perfected" until March 12, he sent the initial complaint via certified mail on March 2, 2008.  Yet Santiago's signature on the charge, as well as the Notary's signature, is dated March 12, 2008; and even assuming that the complaint was mailed on March 2, plaintiff still fails to cite any competent evidence suggesting that Keller knew about it.  In its Local Rule 56.1 Statement, defendant asserts that "[p]laintiff does not know when Dr. Keller received notice of his first EEOC charge."  L.R. 56.1 Stmt. ¶ 69. Plaintiff has effectively conceded this point by failing to cite any evidence in opposition to it.  Pl.'s Resp. L.R. 56.1 Stmt. ¶ 69.  He offers only the cryptic claim that "documents reveal the exact time of when the charges were received," and that "Santiago made CPS [Chicago Public Schools] aware of the Charges on March 11, 2008, when CPS documented Santiago [sic] refusal to signed [sic] written papers by CPS."  *Id.*  Putting aside the lack of evidence for this assertion, plaintiff does not explain how CPS's awareness of the charge on March 11 affords any basis for thinking that Keller was aware of the charge on March 5.

Plaintiff's hostile work environment claim likewise fails. "To pursue a hostile work environment claim, [a plaintff] must prove (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her membership in a protected class; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). "In order to establish a prima facie case under this theory, a plaintiff must show, among other things, that she has been subjected to behavior so objectively offensive as to alter the conditions of [her] employment." *Jackson v. County of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (quotation marks omitted).

The conduct on which plaintiff's harassment claim is based has been recounted above. As already noted, one fatal problem is that plaintiff cites virtually no evidence in support of these allegations. Furthermore, to the extent that the record contains evidence germane to plaintiff's claims, it runs contrary to his characterization of events. For example, with respect to plaintiff's contention that Keller re-wrote his letter regarding his conflict with another teacher, the record indicates that, for confidentiality purposes, Keller simply redacted student names that plaintiff had mentioned. 56.1 Stmt. ¶ 34. There is no evidence of chicanery on Keller's part. Indeed, in her reply to plaintiff, she asked him to review the document and to inform "on whether or not

the document reflects the accuracy of your summary." Def.'s Ex. 12. As for the fact that he was required to submit lesson plans while others were not, defendant points out that this was due to the fact that, at the time, plaintiff was a tutor and, unlike the others, was not assigned to a particular classroom. 56.1 Stmt. ¶ 76. In short, no reasonable jury could conclude based on plaintiff's evidence that he was subjected to severe or pervasive harassment (if the conduct in question could be regarded as "harassment" at all). Nor, once again, has plaintiff pointed to any evidence suggesting that the alleged harassment had anything to do with the fact that he was a male.

Finally, defendant is entitled to summary judgment on plaintiff's breach of contract claim. The precise nature of the claim is not entirely clear, but the gist of it is that in order to gain acceptance to the ACE program, an applicant is required to obtain an endorsement from a school principal who agrees to act as his mentor for the duration of the program. Plaintiff claims that Keller entered into a binding contract with him when she agreed to serve as his mentor. He further contends that Keller breached the contract when, after several months, she refused to continue mentoring him. Plaintiff appears further to argue that his "contract" with Keller represents a property interest and that Keller is a state actor by virtue of her employment with the public schools. He therefore claims that the alleged breach constituted

a taking without due process of law. Plaintiff also cites the alleged breach as evidence of discrimination, claiming that while Keller refused to continue serving as his mentor, she honored her commitment to the female teachers whom she had agreed to supervise.

This claim fails at the most basic level because plaintiff offers no evidence to support the contention that he and Keller entered into a valid, enforceable contract. The record indicates that plaintiff asked Keller to mentor him, and that Keller later sent the necessary endorsement to ACE stating, "I believe that Mr. Andres Santiago has leadership potential, and I will help him to prepare to lead in the Chicago Public Schools by encouraging and supervising this candidate's degree requirements over the 18 month period starting, in October 1, 2007." See Pl.'s Ex. 12 at 0396. However, there is no writing purporting to be a contract between Keller and plaintiff; nor is there any evidence indicating the presence of the other elements necessary to form a valid contract. For example, there is no evidence that Keller's agreement to mentor plaintiff was supported by consideration.

In short, plaintiff has failed to establish a triable issue of fact in response to any of defendant's arguments for summary judgment on the claims asserted in his complaint.

### III.

For the reasons discussed above, defendant's motion for summary judgment is granted.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: October 13, 2010